# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-200

MAMIE GORDON, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided     July 23, 2001  )

*Victoria A. Phillips*, of Washington, D.C., was on the brief for the appellant.

*Leigh A. Bradley,* General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Allyn L. Engelstein*, all of Washington, D.C., were on the brief for the appellee.

Before HOLDAWAY, STEINBERG, and GREENE, *Judges.*

STEINBERG, *Judge*: The appellant, through counsel, seeks review of a November 25, 1998, Board of Veterans' Appeals (Board or BVA) decision that denied the appellant's request for waiver of recovery of the overpayment of Department of Veterans Affairs (VA) non-service-connected death-pension benefits on the ground that the waiver application was not timely filed. Record (R.) at 2. The appellant filed, pro se, an informal brief, and the Secretary filed a motion for single-judge affirmance. Subsequently, the case was submitted for panel consideration, and counsel entered on behalf of the appellant. On November 27, 2000, the Court determined that further briefing was needed and ordered the parties to file memoranda of law regarding specific questions posed by the Court in its order. *Gordon v. Gober*, 14 Vet.App. 193 (2000) (per curiam order). On December 27, 2000, the Secretary filed a responsive memorandum, and on March 15, 2001, the appellant filed a supplemental brief that responds to the questions posed by the Court's order and raises additional argument. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and

7266(a). For the reasons that follow, the Court will vacate the Board decision and remand the matter.

## I. Background

The appellant is the unremarried widow of World War II veteran Sydney Gordon, who had active service from April 1942 to April 1943. R. at 2, 9. Apparently, the veteran died and the appellant was thereafter awarded VA death-pension benefits. In December 1993, for reasons that are not made clear in the record on appeal (ROA), the appellant submitted to a VA regional office (RO) an eligibility-verification report that included information as to her income and net worth. R. at 12-13. On January 6, 1994, the VARO notified her that her "award of pension [wa]s suspended" pending review of "income issues". R. at 15. Following additional RO notices regarding suspension of her death-pension benefit (R. at 17-18, 20), the appellant was notified in September 1994 that her "income . . . exceed[ed] the maximum allowable by law . . . for a widow without dependents" and that her death-pension award had therefore been "terminated . . . effective January 1, 1991." R. at 22. Later that month, the VA Debt Management Center [hereinafter VA Center] notified her that she owed VA $4,788.00 as the result of overpayments of the death-pension benefit. R. at 25; Supplemental (Suppl.) R. at 1. The letter informed her of her rights, including the right to request a waiver of the debt within 180 days after the date of that letter, and stated: "A waiver means all or part of the debt may be forgiven. A waiver cannot be granted if there is fraud, misrepresentation[,] or bad faith on your part in connection with the change in your benefits that caused the overpayment." R. at 25; Suppl. R. at 1.

In September 1996, the appellant, having made payments on the debt and reduced the principal to $4,038, requested a waiver of the balance due; she asserted, as bases for a waiver, economic hardship, and the facts that she was then 75 years old, had had to retire from work on March 29, 1996, was on Medicaid and receiving food stamps, was receiving $508 per month from the Social Security Administration, and had monthly expenses that exceeded her monthly income by $112.50. R. at 27-30, 34.

On September 24, 1996, the VA Center denied the appellant's waiver request on the ground "that an application for waiver must be made within 180 days from the date of notification of an

2

indebtedness" and that her request had not been so submitted. R. at 32. In October 1996, she filed a Notice of Disagreement as to the VA Center's decision; she explained that she had not requested a waiver within 180 days after the date of the overpayment notification because at that time she had been employed and had been able to make payments pursuant to a payment plan that she had negotiated with VA. R. at 37. The RO issued a Statement of the Case in November 1996 (R. at 40-43), and in December 1996 the appellant filed a Substantive Appeal to the Board, reiterating that she did not initially apply for a waiver because she felt that as long as she could work, she would "try and pay some of this money back". R. at 45-46. In the November 25, 1998, BVA decision here on appeal, the Board concluded that the appellant's request for a waiver was not timely filed and denied her appeal from the RO's denial of waiver. R. at 1-5.

## II. Analysis

In his motion for summary affirmance, the Secretary urges the Court to affirm the Board decision based on the declaration in 38 U.S.C. § 5302(a) that "[t]here shall be no recovery of payments or overpayments . . . of any benefits under any of the laws administered by the Secretary whenever the Secretary determines that recovery would be against equity and good conscience, if an application for relief is made within 180 days from the date of notification of the indebtedness by the Secretary to the payee" and in 38 C.F.R. § 1.963(b) (2000) that "[a] request for waiver . . . shall only be considered . . . if made within 180 days following the date of a notice of indebtedness".

On November 27, 2000, the Court ordered the parties to file memoranda regarding certain possible inconsistencies in the statutory and regulatory framework regarding waiver applications, and as to whether the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), could have any potential impact on this case. *See Gordon*, *supra.* Rather than file a memorandum in response to the Court's order, however, the appellant filed, through counsel, a supplemental brief. The Secretary has not objected to the form of the appellant's response, and the Court will not raise such an objection sua sponte, especially because the appellant's supplemental brief represents the first and only substantive filing by counsel on behalf of the appellant.

3

In her supplemental brief, the appellant argues that the Board decision should be reversed (Suppl. Br. at 4) because, inter alia, the Board failed to consider and apply 38 C.F.R. § 1.942 (2000). That regulation, contained in the section of title 38, U.S. Code of Federal Regulations that applies to "STANDARDS FOR SUSPENDING OR TERMINATING COLLECTION ACTION", provides:

**§ 1.942 Termination of collection activity.**

Termination of collection activity involves a final determination. Collection activity may be terminated on cases previously suspended. The Department of Veterans Affairs may terminate collection activity and consider closing the agency file on a claim which meets any one of the following standards:

(a) *Inability to collect any substantial amount.* Collection action may be terminated on a claim when it becomes clear that VA cannot collect or enforce collection of any significant amount from the debtor, having due regard for the judicial remedies available to the agency, the debtor's future financial prospects, and the exemptions available to the debtor under State and Federal law. In determining the debtor's inability to pay, the following factors, among others, shall be considered: Age and health of the debtor, present and potential income, inheritance prospects, the possibility that assets have been concealed or improperly transferred by the debtor, the availability of assets or income which may be realized by means of enforced collection proceedings.

(b) *Inability to locate debtor.* The debtor cannot be located, no security remains to be liquidated, the applicable statute of limitations has run, and the prospects of collecting by offset are too remote.

(c) *Death of debtor.* The debtor is determined to be deceased and the Government has no prospect of collection from his/her estate.

(d) *Cost will exceed recovery.* The cost of further collection effort is likely to exceed the amount recoverable.

(e) *Claim legally without merit.* Collection action should be terminated on a claim whenever it is determined that the claim is legally without merit.

(f) *Claim cannot be substantiated by evidence.* VA will terminate collection action on once asserted claims because of lack of evidence or unavailability of witnesses only in cases where efforts to induce voluntary payment are unsuccessful.

38 C.F.R. § 1.942. The Board did not address this regulation, and the Secretary has not sought leave to file a response to the appellant's supplemental brief, wherein the appellant raises the argument for the first time.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that although this Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the [C]ourt, it is not compelled to do so in every instance." *Maggitt v. West*, 202 F.3d 1370,

1377 (Fed. Cir. 2000). The Federal Circuit then invited this Court to "develop of [sic] body of law in its unique setting that will permit [a] comparable certainty in outcome [to that] that has occurred in other fields of law." *Id.* at 1378. In *McCormick v. Gober*, the Court took "the first step toward creating that 'body of law'." *McCormick*, 14 Vet.App. 39, 44 (2000) (quoting *Maggitt*). There, the Court considered that having the Board address in the first instance the questions that had been raised for the first time to the Court on appeal "would be helpful to the Court's review of this matter and, further, that [some of those] questions [we]re peculiarly within the competence of VA to address." *Id.* at 45. Other factors cited by the Court as a basis for its decision to remand the matter rather than address the questions in the first instance were as follows:

> A remand will likely benefit the Court by producing "a better record . . . for appellate review of the agency decision" and, further, may result in the "agency self-correct[ing] and amend[ing] its ways", which, in turn, would "protect agency administrative authority" regarding the interpretation of its own issuances as well as "promote judicial efficiency".

*Ibid.* (quoting *Maggitt*, *supra*); *see also Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[a]ppellate courts can 'review' only that which has happened in the past" and Court must thus vacate BVA decision that fails to make necessary findings of fact and remand the matter for VA adjudication); *Holliday v. Principi*, 14 Vet.App. 280, 290 ("the Court must avoid cutting off an appellant's rights under the VCAA by prematurely injecting itself into the VA adjudication process and making determinations on issues that were not addressed by VA in the first instance"), *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order); *Teten v. West*, 13 Vet.App. 560, 564 (2000) (remanding matter for BVA to consider law and make factual findings in first instance, pursuant to *Maggitt* and *Hensley*, both *supra*).

In the instant case, the appellant requests that the Court consider in the first instance -- and reverse the BVA based on -- a regulation (§ 1.942) that was not considered by the Board and, further, that has not been considered in any precedential court decision. Moreover, consideration of the application of the regulation to this case might require the Court to make factual determinations as to whether the appellant meets the requirements of the regulation and, in turn, to define several terms contained within that regulation, without first allowing VA to take a position on such issues in the

course of the regular process of claims adjudication. For example, it appears that the Court would be required to determine, inter alia, whether the RO's January 1994 notification to the appellant that her death-pension award was then "suspended" (R. at 15; *see also* R. at 17-18, 20) was a suspension for the purposes of § 1.942 ("[c]ollection activity may be terminated on cases previously suspended"), and, at a minimum, either (a) whether the appellant's economic situation, age, and health, etc., met the requirements of § 1.942(a); or (b) whether the costs of VA's collection efforts would be "likely to exceed the amount recoverable" (or even whether the costs have ***already*** exceeded that amount), 38 C.F.R. § 1.942(d). Moreover, the regulation appears to have discretionary rather than mandatory application ("***may*** terminate collection activity and consider closing the agency file on a claim", 38 C.F.R. § 1.942 (emphasis added)), and the Court would benefit from allowing the Board to consider exercising that discretionary authority prior to our undertaking review of this matter. Finally, whether or not VA's exercise of its § 1.942 termination authority is a matter that this Court may properly review is a subject on which we express no view. Because consideration of the newly raised argument could benefit from additional development of the record or VA factfinding, and because consideration of the argument by VA in the first instance might produce a different result on remand, the Court will remand this matter (thereby promoting both the protection of agency authority and judicial economy), with instructions for the BVA to address the arguments raised in the appellant's supplemental brief. Also, for the foregoing reasons, the Court will not grant the reversal sought by the appellant based on § 1.942.

The Court notes that the appellant in this case appears to have made every effort to repay the debt that she incurred as a result of an overpayment of death-pension benefits, and, moreover, that there is no suggestion here that incurring the overpayment was intentional on the part of the appellant. The Secretary, in his motion for summary affirmance, conceded that the only reason that the appellant now seeks a waiver is due to "a change in her financial circumstances in 1996" (i.e., impoverishment based on loss of wages due to her retirement at age 75 (R. at 27-30, 34)), and that this case presents an "unfortunate situation". These factors may be relevant in terms of the applicability of § 1.942.

As to the appellant's remaining arguments, in view of the foregoing the Court holds that review of those arguments would be premature at this time and thus will not exercise its jurisdiction

over those arguments; however, on remand, the Board is required to consider all arguments put forth in the appellant's supplemental brief as well as any possible application of the VCAA, which was enacted subsequent to the BVA decision. *See Holliday*, 14 Vet.App. at 286 ("all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment"); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) ("A remand is meant to entail a critical examination of the justification for the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case.").

### III. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties, the Court vacates the November 25, 1998, BVA decision and remands the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 5103, 5103A, 5107, 7104(a), (d)(1); 38 C.F.R. § 1.942, 1.962, 1.963; *Fletcher*, *supra* -- all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). The Secretary's motion is denied. On remand, the appellant's supplemental brief will be made part of her claims file, and the Board will be required to address the arguments therein; in addition, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed

7

to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.